Strauss & Co., Inc., *v.* Berman, Appellant.

Argued May 22, 1929.   Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*Sigmund H. Steinberg,* of *Wolf, Block, Schorr & Solis-Cohen,* for appellant, cited: Siracusa v. Construction Co., 43 Pa. Superior Ct. 466; Warner v. Emanuel Church, 174 Pa. 466; Mechanics Bank of Alexandria v. Bank, 5 Wheaton 326.

*Edwin Fischer,* of *Rose & Fischer,* for appellee, was not heard.

OPINION BY MR. JUSTICE WALLING, July 1, 1929:

At the time here in question, the defendant, Louis Berman, was engaged in the theatre and moving picture business in several cities usually, in each instance, in the name of some corporation of which he was the president. This included the Embassy Theatre in Baltimore. In the early winter of 1925-6 the plaintiff, Strauss & Company, Inc., of New York, constructed a marquise or canopy over the entrance to the Embassy Theatre. This suit, brought to recover the balance due therefor, resulted in a verdict and judgment for plaintiff and the defendant has appealed.

The controlling question in the case was as to the individual liability of the defendant. He was president of a Delaware corporation, known as the "Independent Theatre Corporation," which he urged was the real debtor. It was then the lessee of the Embassy Theatre. The contract was negotiated on behalf of the plaintiff by its agent, William Yeager, in a personal interview with the defendant. Yeager testified that it was expressly agreed that the work was to be done for and materials furnished to the defendant personally and on his credit. Based on this interview, plaintiff, on November 25, 1925, submitted to the defendant individually a written proposition to erect the marquise, including certain extra work, for $4,275. Defendant changed the proposition from a galvanized steel to a copper ceiling and added $100 to the price, affixing thereto his initials (L. B.) and at the end, opposite the word "Approved" signed

434

his name "Louis Berman," over which he wrote "Independent Theatre Corp." After some further correspondence, which on part of the plaintiff was uniformly directed to Berman individually, his final letter was signed "L. Berman," under which he wrote "L. Berman, Independent Theatres Corp." Nowhere in the negotiations did plaintiff refer to the corporation nor was it named as a party in any of the negotiations, nor did Berman therein name or sign himself as its president. Before the work was completed, however, Berman sent plaintiff two notes to apply thereon signed,

"Independent Theatre Corp
"Louis Berman      Pres"

These were retained by plaintiff, but not paid. So far as appears, the bills sent by plaintiff on account of this contract were made out against Berman and sent to him personally. It does not appear that plaintiff ever recognized the corporation as a party to the contract, and there is no sufficient evidence that it accepted the notes of the corporation in payment for the marquise or made any agreement to do so. Defendant, called as a witness, said the contract was made for the Independent Theatre Corporation and as its president, and denied that he agreed to be personally bound, although unable to recall the conversation with Yeager.

Under all the evidence, a verdict should have been directed for the plaintiff; hence, the numerous errors assigned to the charge of the trial judge need not be considered. Except by mutual consent, an offer to enter into a contract with one person cannot be accepted by another. The rule stated in 13 C. J. 273, is that, "When an offer is made to a particular person it can be accepted by him alone, and is not transferable by him to another." This is supported by authorities therein cited and is undoubtedly sound. Hence, the offer made to Berman could not be accepted by the Independent Theatre Corporation, whatever the form, except by the plaintiff's consent or ratification, of which there was no

sufficient evidence. Furthermore, the acceptance on its face, was that of the defendant rather than that of the corporation. His individual signature personally and not as president or for the corporation was written opposite and to the right of the word "Accepted," while the words "Independent Theatre Corp." were written one line above, the names being in form as follows:

> "Independent Theatre Corp.
> "Accepted: Louis Berman."

Had the written offer been made to the corporation, Berman, being in fact its president, the names as written above might perhaps be construed as an obligation of the corporation. But, being addressed to Berman personally and so accepted by him, the corporate name written above did not release him from personal liability, in the absence of an agreement to deal with the corporation. In other words, on the face of the paper, plaintiff might properly understand it was contracting with Berman.

Again, the letter of December 16, 1925, confirming a prior letter from plaintiff as to an addition to the original contract, is as follows:

"Dear Mr. Yeager:

"Herewith confirming your letter of Dec. 15th, to build new upright for Embassy Theatre, Baltimore, and as per your letter the additional cost over the old arrangement is to be as agreed upon in your letter, $150.00.

> "Yours very truly
> "(Signed) L. Berman
> "L. Berman
> "Independent Theatre Corp."

This double signing of his name first as L. Berman and then as L. Berman above the corporate name, imports a personal liability, whatever, if anything, it may also tend to show as to a corporate liability. Under the facts here disclosed, the insertion of the corporate name might be construed as descriptive of lessee of the theatre in ques-

tion rather than as imposing liability upon it. Or it might be to identify the transaction, as is the effect of adding the word "Committee" or "Executor." See Ulam et al. v. Boyd, 87 Pa. 477. The question here is the personal liability of the defendant and not the possible concurrent liability of the corporation. Corporations are sometimes held on obligations defectively executed where such was the intention of the parties; but, in the instant case, the plaintiff never intended to deal with the corporation. The case of Siracusa v. The Miller Cons. Co., 43 Pa. Superior Ct. 466, cited for defendant, is not applicable; for there the letter containing the offer was addressed to the corporation, and not as here to an individual. There is nothing here to show that the plaintiff ever addressed a letter, bill or other communication to the Independent Theatre Corporation or in any manner recognized it as a party to the transaction. That Berman later gave plaintiff corporate notes on account of this work did not change the contract. There was no agreement that they should constitute a payment of the indebtedness and, of course, they did not destroy the right of action on the contract but were in the nature of security for it. Any payments made on the notes would have reduced the indebtedness.

We find nothing in the record to constitute either a legal or equitable defense and the judgment is affirmed.